AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Two storage units and a safety deposit box rented by<br>Cesar Clemente III, as more fully described in<br>Attachments A1 and A2 | )<br>)<br>)<br>)<br>)<br>)   Case No.   MJ21-289 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Two storage units and a safety deposit box, as more fully described in Attachments A1 and A2, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1), 841(b)(1), 843, and 846 | Distribution of and possession with intent to distribute controlled substances, use of communications facilities to facilitate drug trafficking, conspiracy to commit these offenses |
| 18 USC § 924(c) | Possession of a firearm in furtherance of a drug trafficking offense |

The application is based on these facts:
- ✓ See attached affidavit of FBI Special Agent Shawna McCann.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Shawna McCann, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____05/15/2021_____

_____
*Judge's signature*

City and state: _____Seattle, Washington_____

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO: 2019R01083

# AFFIDAVIT OF SHAWNA MCCANN

STATE OF WASHINGTON        )
                           )        ss
COUNTY OF KING             )

I, Shawna McCann, a Special Agent with the Federal Bureau of Investigation, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION**

1.      This Affidavit is being submitted pursuant to Federal Rule of Criminal Procedure 41 in support of an Application for a warrant authorizing the search of the following locations associated with Cesar Clemente III:

a.      Storage Unit Numbers 1042 and 3127 at West Coast Self-Storage Columbia City, located at 3736 Rainier Avenue S, Seattle, Washington, rented under the name Cesar Clemente III (the "SUBJECT UNITS"), as further described in Attachment A1, which is attached hereto and incorporated herein, for the items to be searched for and seized described in Attachment B, which is attached hereto and incorporated herein.

b.      Safety deposit box 457 at the Capitol Hill branch of U.S. Bank, located at 135 Broadway E, Seattle, Washington, rented under the name Cesar Ysmael Clemente III (the "SUBJECT BOX"), as further described in Attachment A2, which is attached hereto and incorporated herein, for the items to be searched for and seized described in Attachment B, which is attached hereto and incorporated herein.

2.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 (Distribution of Controlled Substances), 846 (Conspiracy), and 843(b) (Use of Communication Facility to Facilitate Controlled Substance Offense), and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Offense) have been committed, are being committed, and will be

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

committed by Michael Walker and his associates, including Cesar Clemente III, in furtherance of the Michael Walker Drug Trafficking Organization (DTO). There is also probable cause to believe that the locations described above contain evidence of the aforementioned offenses. As such, there is probable cause to search the locations described in Attachments A1 and A2, for evidence, instrumentalities, or contraband of these crimes, as described in Attachment B. Obtaining the information sought in this Affidavit is necessary to further the investigation into these offenses.

## AGENT BACKGROUND

3.      I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed with the FBI since September 2017. I am currently assigned to the Seattle Field Division where I am a member of the violent crime, gang, and Transnational Organized Crime – Western Hemisphere squad. In this capacity, I investigate, *inter alia*, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 *et seq*., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 400 hours of classroom training including, but not limited to, drug identification, drug interdiction, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, manufacturing, and trafficking of controlled substances.

4.      In my role as a Special Agent for the FBI, I have participated in narcotics investigations (e.g., heroin, cocaine, marijuana, and methamphetamine) that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotics-related evidence and the forfeiture of narcotics-related assets. I have been involved in the service of federal and state search warrants as part of these investigations. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, export, conceal, and distribute controlled substances. I am also familiar with the manner in which drug

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  traffickers use telephones, often cellular telephones, to conduct their unlawful operations,

2  and how they code their conversations to disguise their unlawful activities. I am also

3  familiar with the various methods of packaging, delivering, transferring, and laundering

4  drug proceeds. Additionally, through my training and experience, I can identify illegal

5  drugs by sight, odor, and texture.

6          5.       I have also worked on drug investigations involving the use of court-

7  authorized wiretaps under Title III. In that capacity, I have had the opportunity to

8  monitor, listen to, and review transcripts and line sheets (prepared by linguists)

9  documenting the content of hundreds of intercepted conversations involving the

10  trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who

11  used some form of code to attempt to thwart law enforcement detection. I have also

12  interviewed defendants at the time of their arrest and have debriefed, spoken with, and/or

13  interviewed numerous drug dealers or confidential sources (informants) at proffer and

14  field interviews who were experienced in speaking in coded conversation over the

15  telephone. From these interviews, and also from discussions with other experienced

16  agents, I have gained knowledge regarding the various methods, techniques, codes,

17  and/or jargon used by drug traffickers in the course of their criminal activities, including

18  their use of firearms to protect their narcotics-related activities and of cellular telephones

19  and other electronic means to facilitate communications while avoiding law enforcement

20  scrutiny.

21          6.       I have written affidavits in support of court-authorized federal warrants and

22  orders in the Western District of Washington for GPS tracking of telephones, Pen

23  Register/Trap and Trace, and search warrants. Additionally, I have testified in grand jury

24  proceedings, written investigative reports, and conducted and participated in numerous

25  interviews of drug traffickers of various roles within drug organizations, which has

26  provided me with a greater understanding of the methods by which drug trafficking

27  organizations operate.

28

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 *et seq*., and related offenses.

8.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for the search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## APPLICABLE LAW

9.      Title 21, United States Code, Section 841 provides for criminal penalties for the distribution of, and possession with intent to distribute, controlled substances. Title 21, United States Code, Section 846 provides for criminal penalties for those who conspire to commit these acts. In addition, Title 21, United States Code, Section 843(b) makes it a felony offense to use a communications facility (including cellular telephones) to facilitate a controlled substance offense.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

10.     Based upon my training and experience, including my experience in this investigation, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

a.      Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes, vehicles, storage lockers, and businesses.

b.     Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization. Traffickers commonly maintain this information in books or papers as well as in their cellular telephones. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

c.     Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences, vehicles, and storage lockers. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession or at their premises.

d.     During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of vehicles, residences, and/or storage units.

e.     Persons trafficking and using controlled substances commonly sell or use more than one type of controlled substance at any one time.

f.     Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes,

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

but is not limited to, scales, plastic bags and cutting/diluting agents and items to mask the odor of drugs.

g.     It is common for drug dealers to also be users of their product, and that it is common for the drug user to maintain paraphernalia associated with the use of controlled substances.

h.     Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances, including travel records, in locations convenient to them, such as their residences and vehicles.

i.     Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions, and evidence of consequential financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

j.     Traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.     Traffickers often have false identification documents and identification documents in the names of others in order to conceal their identities.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

l.      Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, and that even though these assets are in other persons' names, the drug dealers actually own and continue to use these assets and exercise dominion and control over them.

m.      Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

11.     As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

a.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

b.     The stored list of recent received calls and sent calls, as well as the voicemail content from missed calls, is important evidence. It identifies telephones and individuals recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. If the caller leaves a voicemail, it also may help identify the caller and the purpose of the call. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        c.      Stored text messages, emails, and any social media content/messages

2    (like Facebook messenger) are important evidence, similar to stored numbers.

3    Agents can identify both drug associates and friends of the user who likely have

4    helpful information about the user, his location, and his activities and purpose for

5    meeting.

6        d.      Photographs and video recordings on a cellular telephone, including

7    metadata, are evidence because they help identify the user, either through his or

8    her own picture/video, or through pictures/videos of friends, family, and associates

9    that can identify the user and the locations the user has been. Pictures/videos also

10   identify associates likely to be members of the drug trafficking organization. Some

11   drug dealers photograph/video groups of associates, sometimes posing with

12   weapons and showing identifiable gang signs. Also, digital photos often have

13   embedded "geocode" or GPS information embedded in them. Geocode

14   information is typically the longitude and latitude where the photo was taken.

15   Showing where the photo was taken can have evidentiary value.  This location

16   information is helpful because, for example, it can show where coconspirators

17   meet, where they travel, and where assets might be located.

18       e.      Stored web browsing history is important evidence because it shows

19   the user's activities and places of interest, including if the user looked up

20   addresses, restaurants, and other businesses on a web browser on the cell phone,

21   which can show where coconspirators meet, where they travel, and where assets

22   might be located. Moreover, through web browsing history, a user can also access

23   or look up associates or coconspirators on social media, which is valuable

24   information in a drug investigation because it will identify members of the

25   organization, such as suppliers, distributors and customers.

26       f.      Stored address records are important evidence because they show the

27   user's close associates and family members, and they contain names and

28   nicknames connected to phone numbers that can be used to identify suspects.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.      Stored data in money transfer applications, such as Venmo and CashApp, are important evidence because they show from whom and to whom the user is sending money. In the era of digital currency and online money transfers, I know based on my training and experience, and intercepted communications during this investigation that drug traffickers, and specifically drug traffickers within the Michael Walker DTO, use Cash App and other money transfer applications to pay for drug products in lieu of physical cash. Accordingly, any stored data on money transfer applications on cell phones can show the user's drug trafficking associates, customers, and other connections.

h.      Stored location data, including from any map applications on the cell phone, are important evidence because the data can show where the user has been, including addresses of residences and business parking lots, which can show stash house locations, drug transaction meeting locations, or the addresses of a drug trafficker's associates, customers, or suppliers.

## STATEMENT OF PROBABLE CAUSE

12.     The United States, including the FBI, is conducting a criminal investigation of Michael Walker and the Michael Walker DTO regarding possible violations of Title 21, United States Code, Sections 841, 846, 843(b), and related crimes.

**A.      Background Regarding Michael Walker and His Drug Trafficking**

13.     Investigators believe Michael Walker to be a trafficker of narcotics in this District. To summarize, according to historical reports, Michael Walker has been a subject or person of interest in drug investigations at least as far back as 2016, including reports of Michael Walker making trips to and from Los Angeles to pick up narcotics and supplying cocaine to numerous individuals. In 2019, two separate individuals stated they had purchased cocaine from Michael Walker and/or Michael Walker's associates, Maghan Stenson, Stevie Allen, and Jamaal Davis, on several occasions in the past.

14.     Beginning in 2019, the FBI and Seattle Police Department (SPD) began investigating Michael Walker and the drug trafficking organization (DTO) Michael

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Walker is affiliated with within the Western District of Washington. Through the use of confidential source information and traditional investigative techniques, agents[1] identified several individuals, including Michael Walker, Maghan Stenson, Jamaal Davis, James Lowe, Kevin Gipson, and Stevie Allen who are involved in the trafficking and distribution of drugs in this District.

15.     As part of this investigation, agents conducted several rounds of court-authorized wiretaps on several target cell phones, including Michael Walker using TT8, Larry Collins using TT16, Jimmy Carter using TT20, and Kefentse Lumumba-Olabisi using TT30.[2]

**B.     Cesar Clemente III's History of Drug Trafficking**

16.     On April 14, 2020, at approximately 2:43 p.m., agents observed, via remote surveillance, a white Toyota Highlander bearing Washington license plate BCW0719 (Subject Vehicle 18) pull into the driveway of Michael Walker's residence in Renton. Via remote video surveillance, a male, identified as Cesar Clemente III based on a comparison to his driver's license photograph, exited the white Toyota Highlander, opened the rear driver's side door, retrieved a black backpack, and walked into Walker's residence. At approximately 2:49 p.m., agents observed, via remote surveillance, Cesar Clemente III exit Walker's residence carrying the black backpack in one hand, which appeared to be lighter/weigh less than when Cesar Clemente III carried the backpack into the residence. Cesar Clemente III put the black backpack in the rear driver's side of the Toyota Highlander and departed Michael Walker's residence. At approximately 2:57 p.m., agents observed Cesar Clemente III park at an apartment complex located at 1104 S

[1] When I use the term "agents" and "investigators" throughout this Affidavit, I am referring to law enforcement personnel, including but not limited to FBI agents and intel personnel, DEA agents, IRS agents, task force officers, and Seattle Police Department sergeants, detectives, and officers.

[2] Agents confirmed each listed individual was the user of each corresponding device, respectively, by obtaining a search warrant for and/or wiretap order that included GPS location data for each device, and observed each individual, identified based on a comparison to their driver's license photograph, in the vicinity of the GPS ping radii for each device at multiple different times and locations.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18th Street, Renton, Washington. Agents then observed Cesar Clemente III meeting with an unknown male in the front passenger seat of the white Toyota Highlander. At approximately 3:14 p.m., agents observed Cesar Clemente III and the unknown male standing in the parking lot of the apartment complex smoking marijuana, determined based on the odor emitted from the smoke. At approximately 4:09 p.m., agents observed the unknown male go inside an upstairs apartment unit door, either unit #7 or #4, by entering a code on the door. At approximately 4:11 p.m., agents observed the unknown male exit the apartment unit carrying a black and red shoe box in one hand and accompanied by a small child. The black male handed the shoe box to Cesar Clemente III and then Cesar Clemente III departed the apartment complex lot driving the white Toyota Highlander.

17.     At approximately 4:15 p.m., agents initiated a vehicle stop on Cesar Clemente III. Cesar Clemente III failed to stop his vehicle and continued driving. Cesar Clemente III stopped at a red light in the far left lane at the intersection of Benson Road S and 515/Benson Drive S in Renton, Washington, but still refused to pull over. An agent with activated emergency lights pulled up alongside Cesar Clemente III and told Cesar Clemente III that he was the police and instructed Cesar Clemente III to pull over. Cesar Clemente III refused to pull over and proceeded to run the red light, crossing other lanes of stopped traffic, and turned right onto 515/Benson Drive S. Agents observed Cesar Clemente III eventually park on the street across from a residence located at 1032 S 32nd Place, Renton, Washington. Cesar Clemente III quickly exited the white Toyota Highlander, grabbed the black backpack and another bag from the backseat of the white Toyota Highlander, and ran across the street towards the residence at 1032 S 32nd Place, Renton, Washington. Agents observed Cesar Clemente III run to the side of the house, through a wooden fence/side gate, and into the backyard of 1032 S 32nd Place, Renton, Washington. At approximately 4:35 p.m., agents observed Cesar Clemente III exit the residence at 1032 S 32nd Place, Renton, Washington followed by an unknown male later identified as Cesar Clemente III's cousin. Cesar Clemente III was placed into handcuffs

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 and temporarily detained by agents as a result of his failure to pull over for law

2 enforcement and then fleeing on foot with a backpack and another bag into his cousin's

3 residence.Cesar Clemente III was read *Miranda* warnings by agents. Cesar Clemente III

4 verbally stated that he understood his rights and agreed to waive his rights and speak with

5 law enforcement without a lawyer present. At this time, Cesar Clemente III admitted that

6 he had four pounds of marijuana in the backpack and a firearm, all of which he had

7 retrieved from the white Toyota Highlander before running across the street to his

8 cousin's house.[3] Cesar Clemente III stated that he had a valid firearms carry permit and

9 carried the firearm for protection. Cesar Clemente III admitted he often traveled with

10 large amounts of cash and marijuana and was worried about being robbed. Agents located

11 a firearm, a cell phone, and keys to the white Toyota Highlander on Cesar Clemente III's

12 person when he exited his cousin's house and was detained. Cesar Clemente III provided

13 agents with verbal consent to search his cousin's house, including the belongings he put

14 in his cousin's house, and separate verbal consent to search the house was also obtained

15 from Cesar Clemente III's cousin. In the cousin's residence, agents located a backpack

16 that Cesar Clemente III acknowledged was his and contained approximately four pounds

17 of marijuana. Agents also located an additional pound of marijuana in the garage and a

18 cell phone in the house. Cesar Clemente III denied going into the garage, but his cousin

19 told agents that Cesar Clemente III went into the garage before exiting the house and

20 being detained by law enforcement and that the one pound of marijuana in the garage was

21 not his. Cesar Clemente III eventually admitted that the cell phone found in his cousin's

22 house was his, and that he had two cell phones. Cesar Clemente III provided agents with

23 verbal consent to search his white Toyota Highlander. Agents located a wallet inside the

24 vehicle that contained a driver's license for Cesar Clemente III, various credit/bank cards,

25 an EBT card, and approximately $30.00 in the center console of the vehicle. The white

26

27

28 [3] Agents consulted with a Washington State Liquor and Cannabis Board investigator who was shown photographs of the marijuana seized from Cesar Clemente and advised that the marijuana was not legally packaged for processing, transportation, or sale, nor did Cesar Clemente have the required inventory form for transporting marijuana legally.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Toyota Highlander smelled strongly of marijuana, as did Cesar Clemente III's clothes.

2  Cesar Clemente III declined to provide consent to search his cell phones. While agents

3  were submitting Cesar Clemente III's cell phones into evidence approximately one to two

4  hours after releasing Cesar Clemente III, both cell phones were remotely wiped/restored

5  to factory settings. Based on my training and experience, I believe that Cesar Clemente

6  III went to Michael Walker's residence to supply Michael Walker with marijuana, which

7  was contained in the black backpack that Cesar Clemente III carried into Walker's

8  residence.

9       18.    In the weeks leading up to this transaction, agents observed Cesar Clemente

10  III via remote video surveillance making short visits consistent with drug transactions at

11  Michael Walker's residence on at least six occasions.  Based on the frequent, short trips

12  Cesar Clemente III made to Michael Walker's residence, often carrying a bag inside

13  Michael Walker's residence and exiting with a bag that appeared lighter, and the vehicle

14  stop shortly after Cesar Clemente III visited Michael Walker's residence on April 14,

15  2020 that resulted in the seizure of about five pounds of marijuana and a firearm, I

16  believe that Cesar Clemente III supplied Michael Walker with marijuana during each of

17  these meetings.

18       19.    On September 28, 2020, agents intercepted a call between Kefentse Olabisi

19  using TT30 and Jimmy Carter using TT20. (Session 3175.) At the beginning of the call,

20  Jimmy Carter told Kefentse Olabisi that he had inadvertently left some "work [cocaine]"

21  there the night before, and when he came back to get it, Kefentse Olabisi was already

22  asleep. Kefentse Olabisi looked and confirmed that he found it, that it had fallen on the

23  ground. The topic of the conversation then shifted to law enforcement. Jimmy Carter told

24  Kefentse Olabisi that someone "told me last night, he said they doing a lot of stings . . .

25  They doing, they setting a lot of people up, right now." As part of this discussion, Jimmy

26  Carter mentioned that a male referred to as "Sac" [Jamaal Davis aka J-Sac] who had just

27

28

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

opened up another restaurant called Tequila and Tacos in Columbia City[4] was "hot [the subject of law enforcement interest]." Kefentse Olabisi agreed and said that his "partner runs, my partner manages the spot. He did it with my Asian partner, Cesar. There is a dude named Cesar. He got his little dispensary too, but man, I ain't fuck with them cats." Jimmy Carter replied, "them motherfuckers is hot bro. My dude already talking about that shit [possibly referring to the April 2020 traffic stop on Cesar Clemente]. Oh all he's doing is he's tripping, he's done, he's done. . . he's liz-aundering [money laundering] through that shit [Jamaal Davis is money laundering through his restaurant], he's done."[5] The two men then discussed who might be "cooperating" and that people were working with "the feds." Based on my training and experience, I believe that Kefentse Olabisi and Jimmy Carter were discussing that Cesar Clemente III, who is Asian/Pacific Islander, was working with Jamaal Davis, whom agents know through prior investigations and confidential source information goes by the alias J-Sac and owns several restaurants/food trucks in the Seattle area including a taco restaurant, and that Jamaal Davis was laundering money through his restaurants. Kefentse Olabisi also referenced Cesar Clemente selling marijuana in addition to working with Jamaal Davis.

20.     In September 2020, a confidential source (CS8)[6] advised agents that CS8 knew Jamaal Davis aka Jay, identified by CS8 based on Jamaal Davis's driver's license

---

[4] Based on physical surveillance and confidential source information, agents identified Jamaal Davis as a Michael Walker DTO associate who owns restaurant businesses in Seattle, including City Teriyaki and a taco restaurant. A confidential source advised that Jamaal Davis uses the restaurants to launder drug trafficking proceeds. Agents conducted open source research and located a restaurant named Taco City Taqueria in the Columbia City, Seattle area that is affiliated with City Teriyaki and Jamaal Davis.

[5] On October 1, 2020, agents intercepted a call between Larry Collins using TT16 and Jamaal Davis at phone number (206) 422-3300 (TT32). (Session 987.) During this call, Jamaal Davis said, "it's there but it's not signed or filled out." Larry Collins replied, "who is gonna fill it out?" and Larry Collins stated that "Cesar's here." Jamaal Davis said that "his signature won't work." Agents believe that Larry Collins was referring to a check that Jamaal Davis had not signed and that Larry Collins was trying to get the check signed by someone authorized to sign. As discussed below, Cesar Clemente was identified as a business partner of Jamaal Davis and thus might have had authority to sign the check.

[6] CS8 has been a confidential source for the DEA since 2014. CS8 is a paid informant and is receiving immigration benefits. CS8 has provided credible and reliable information in the past on other narcotics, firearms, and gang investigations, which has been corroborated by physical surveillance, wire interceptions, and open source research.

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

photograph. CS8 stated that Jamaal Davis owns Taco City and City Teriyaki in Seattle. CS8 reported that Jamaal Davis offered to introduce CS8 to narcotics dealers who can move multiple ounces to kilos of narcotics and informed CS8 that he would talk to his people and get back to CS8 in a few days. CS8 stated that Jamaal Davis always had a lot of cash on hand and believed that Jamaal Davis was laundering narcotics proceeds through his restaurant businesses. Later in September 2020, Jamaal Davis informed CS8 of prices for cocaine, pills, methamphetamine, and heroin. CS8 advised agents that Jamaal Davis had a business partner that went by the name "Cesar," who CS8 positively identified as Cesar Clemente III based on his driver's license.

21. Finally, agents obtained reported earnings/wages for Cesar Clemente III from Washington State Employment Security Department, which showed that he had no reported wages from January 1, 2016, through December 31, 2019. This amount of reported income is inconsistent with his apparent lifestyle of owning two luxury vehicles outright with no financing[7] and does not appear to reflect his actual income, acquired through drug trafficking based on his association with the Michael Walker DTO and its members involved in drug trafficking.

**C.    Search of Cesar Clemente III's Residence and Identification of the SUBJECT UNITS and SUBJECT BOX.**

22. On March 31, 2021, the Honorable Mary Alice Theiler issued search warrants for Cesar Clemente III's residence, 12120 SE 186th Street, Renton, Washington, and two vehicles associated with Cesar Clemente III.

23. Agents executed these search warrants on April 7, 2021.  In the residence, agents found Cesar Clemente III and his girlfriend.  In the garage, agents located

---

CS8 has worked on previous investigations that led to criminal charges and has successfully completed multiple controlled purchases of narcotics in various investigations. Information and assistance provided by CS8 has led to the seizure of narcotics and United States currency. CS8 has a felony conviction for conspiracy to distribute cocaine and a misdemeanor conviction for reckless endangerment.

[7] Washington Department of Licensing records show that Cesar Clemente III is the current owner of a black 2003 BMW X5 and a 2014 Audi Q7, and the records do not list any other entity, such as a lender, with an ownership interest in the vehicles.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  numerous large garbage bags full of marijuana. Also in the garage, agents located
2  materials indicating that marijuana processing was taking place at this location. In
3  particular, agents located distillates, extracts, and other derivatives; packaging materials;
4  and materials for rolling "joints" as well as pre-rolled joints. Washington State Liquor
5  and Cannabis Board employees were on site during the search, who confirmed that the
6  materials located were consistent with marijuana processing, and also confirmed that
7  neither Cesar Clemente III nor the location were permitted under Washington State's
8  marijuana regulatory scheme to process or sell marijuana.

9        24.     In a spare bedroom on the second floor of the home, agents located ten
10  firearms, including two firearms that have been determined to be stolen.  There was
11  additional marijuana and THC in edible candies in this room near the firearms.  In a
12  separate room downstairs, agents located two unloaded rifles.

13        25.     In total, agents seized over 100 kilograms of marijuana from the home.
14  They also located over $67,000 in cash, one cell phone, and a ledger containing
15  marijuana types, quantities, and pricing. Agents also located various documents reflecting
16  that Cesar Clemente III owned, operated, or was otherwise affiliated with several
17  businesses, had a safety deposit box at US Bank, and rented storage unit number 1042 at
18  West Coast Self-Storage in Columbia City in his name, Cesar Clemente III.

19        26.     Following the search, on April 7, 2021, Cesar Clemente III was arrested
20  based on a Criminal Complaint for Possession of Marijuana with Intent to Distribute and
21  Possession of a Firearm in Furtherance of a Drug Trafficking Crime. On April 14, 2021,
22  Cesar Clemente III was indicted on these same charges. Cesar Clemente III was not
23  detained following his arrest and was released on bond with conditions.

24        27.     On May 13, 2021, I went to West Coast Self-Storage and spoke with the
25  assistant manager on duty, who advised that Unit 1042 was currently rented under Cesar
26  Clemente III's name. The assistant manager also advised that Cesar Clemente III
27  currently rented another storage unit, number 3127, under his name at that location. The
28  assistant manager advised that payment for both units 1042 and 3127, the SUBJECT

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   UNITS, was late, but that Cesar Clemente III appeared to regularly make his payments
2   for the SUBJECT UNITS after the due date. The assistant manager further advised that
3   records showed that the SUBJECT UNITS were accessed on March 18, 2021, before the
4   search of Cesar Clemente III's residence and arrest;[8] the SUBJECT UNITS were also
5   accessed after Cesar Clemente III's arrest, specifically on May 1, 2021 from
6   approximately 7:50 p.m. to 7:55 p.m. and May 5, 2021 from approximately 12:43 p.m. to
7   12:49 p.m.  Both of these visits were for very short durations, indicating that Cesar
8   Clemente III did not have time to clear out these storage units during these two visits.

9       28.     On May 14, 2021, I received information from an employee at US Bank
10  that Cesar Clemente III has an active safety deposit box rented, specifically safety deposit
11  box 457 at the US Bank branch in Capitol Hill (SUBJECT BOX), under the name Cesar
12  Ysmael Clemente III. The information from US Bank showed that the last payment made
13  by Cesar Clemente III was on August 19, 2020 and that the next payment due on the
14  SUBJECT BOX is May 20, 2022.

15      29.     I know based on my training and experience, that drug traffickers
16  frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and
17  stash locations, including storage units and safe deposit boxes, in order to protect their
18  supply and to have the narcotics on hand for transactions. I also know that drug
19  traffickers maintain records and other trafficking-related materials in their premises,
20  including residences, storage units, and safe deposit boxes, for a long period of time,
21  including current and prior cell phone devices that contain text messages, contact lists of
22  drug trafficking associates, pay-owe sheets, and financial records. Additionally, most
23  illegal marijuana traffickers supply more than one customer. Cesar Clemente III's
24  possession of over 100 kilograms of marijuana in fact indicates that he had numerous
25  customers. Moreover, even if agents believed that Cesar Clemente III had stopped
26
27

---

28  [8] The assistant manager advised that the facility tracks when a renter uses their unique code to access the facility, elevator, and when the specific storage unit door is opened and closed.

distributing marijuana altogether after his arrest on April 7, 2021, they would still expect to find evidence of prior drug trafficking and money laundering in Cesar Clemente III's storage unit, in the form of current and prior cell phone devices, pay-owe sheets, and financial records, among other forms of evidence. As discussed above, drug traffickers often use multiple phones in their drug trafficking business, and it is common to find drug traffickers in possession of multiple phones at one time. Moreover, it is common for drug traffickers to change phones/phone numbers with some frequency to lessen the chances of detection by law enforcement, and it is common for traffickers to retain possession of older phones that are no longer in use. Those phones often still contain evidence of drug trafficking, such as text messages, photographs, and stored contacts, as discussed at further length above.

30.    Based on the large amount of cash and firearms located at Cesar Clemente III's residence, I also believe that additional firearms, cash, or other valuable assets may be located in the SUBJECT UNITS and/or SUBJECT BOX. Particularly I know that drug traffickers are commonly also engaged in money laundering in order to clean/convert their illicit narcotics proceeds into seemingly legitimate money, and that a common stash location for illicit proceeds and/or valuable assets of drug traffickers, such as expensive jewelry, are safe deposit boxes. In light of the lack of reported wages for Cesar Clemente III, I believe that Cesar Clemente III uses illicit drug proceeds to pay for his lifestyle and expenses and therefore likely engages in some form of money laundering to legitimize his illicit drug proceeds, including making frequent but small cash deposits into his bank account and possibly the use of the SUBJECT BOX as a stash location for illicit proceeds or other assets.

## **CONCLUSION**

31.    Based on the foregoing, I submit there is probable cause to believe that contained with the locations described in Attachments A1 and A2, there exists evidence, fruits, and instrumentalities, as described in Attachment B, of violations of 21 U.S.C. §§ 841 and 846 (distribution of, and possession with intent to distribute, controlled

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   substances, and conspiracy to do the same), 21 U.S.C. § 843(b) (use of communication

2   facilities to commit, facilitate, or further an act or acts which constitute a felony), and 18

3   U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking offense),

4   committed by Cesar Clemente III.

5        32.    Based on the foregoing, I respectfully request that the Court issue the

6   proposed search warrant.

7

8                                         _____

9                                         Shawna McCann, Affiant
                                      Special Agent, FBI

10

11        The above-named agent provided a sworn statement to the truth of the foregoing

12   affidavit by telephone on the 15th day of May, 2021.

13

14

15                                         _____

16                                         Brian A. Tsuchida
                                      United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

USAO 2019R01083
AFFIDAVIT OF SA SHAWNA MCCANN - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970